**Michael B. SELSOR, Petitioner,**

v.

**The Honorable E.R. TURNBULL, Judge of the District Court, Fourteenth Judicial District, Respondent.**

**No. P 97–911.**

Court of Criminal Appeals of Oklahoma.

Oct. 14, 1997.

---

### ORDER DENYING PETITION FOR WRIT OF PROHIBITION AND/OR MANDAMUS, AND DISSOLVING STAY OF PROCEEDINGS

The Petitioner, Michael B. Selsor, has filed an application to assume original jurisdiction and a petition for writ of prohibition and/or mandamus asking this Court to strike the Bill of Particulars and prohibit the District Court of Tulsa County from conducting a jury trial which exposes Petitioner to the death penalty, or to the possibility of life without parole, in Case No. CF 75–2181. Initially, this Court stayed proceedings in that case and directed a response from the Respondent or his designated representative. *Selsor v. Turnbull,* No. P 97–911 (Okl.Cr. July 3, 1997) (not for publication). A response has been filed on behalf of the Respondent by the Attorney General for the State of Oklahoma.

In Case No. CF 75–2181, Petitioner was convicted of Murder in the First Degree and was sentenced to Death. On appeal, Peti-

tioner's conviction was affirmed, but his death sentence was modified to life imprisonment due to the unconstitutionality of Oklahoma's death penalty statute, 21 O.S.Supp. 1973, § 701.3. *Selsor v. State,* 562 P.2d 926 (Okl.Cr.1977). Petitioner continued to file collateral proceedings in state and federal court attacking his conviction and modified sentence. Petitioner's conviction and his modified sentence were ultimately overturned, and Case No. CF 75–2181 was remanded to the District Court of Tulsa County for a new trial. *Selsor v. Kaiser,* 81 F.3d 1492 (10th Cir.1996). In re-trial proceedings, Petitioner is again charged for the offense of Murder in the First Degree. The State has filed a Bill of Particulars again seeking the Death penalty against Petitioner.

In this proceeding, Petitioner again relies on *Riggs v. Branch,* 554 P.2d 823 (Okl.Cr. 1976)[1], to support his complaint that the State's filing of the Bill of Particulars on re-trial, under current death penalty statutes, violates the prohibition against ex post facto laws. Petitioner cites *Riggs* and its ex post facto analysis to argue there was no death penalty statute in effect in 1975 because the only constitutionally valid punishment at the time of his alleged crime was life imprisonment. He contends life imprisonment is the only sentence that may be imposed for a 1975 First Degree Murder charge, and that retrial proceedings must be limited to such punishment. He claims that to now apply a new and different set of rules than were applied to defendants who were similarly sentenced under Oklahoma's unconstitutional death penalty statute, 21 O.S.Supp.1973, § 701.3, is plainly a violation of equal protection. Petitioner further complains his exposure to the possibility of greater punishment than that constitutionally in effect at the time of the alleged crime is due only to violations of his

right to effective assistance of counsel, and to allow such exposure flies in the face of due process.

The State's response includes preliminary allegations that Petitioner has not filed sufficient records and transcripts in support of his petition. The State also argues Petitioner has the remedy of a direct appeal to raise the current issues, if he is convicted and sentenced to death on re-trial. However, this Court must recognize that Petitioner's Judgment and Sentence in Tulsa County District Court Case No. CF 75–2181 has been vacated and the case remanded for re-trial. *Selsor v. Kaiser,* 81 F.3d 1492 (10th Cir. 1996). Both parties acknowledge that after remand, the State filed a Bill of Particulars seeking imposition of the death penalty. We find under the facts of this case, and although Petitioner could have provided more records and transcripts, that the record is sufficient for deciding this matter. Moreover, we find that the issue presented can be decided as a matter of law, and that requiring the legal issue to be addressed on appeal, after a trial that includes a death penalty phase, would not be an adequate remedy under the unique facts of this case. Rule 10.6(A) and (B), 22 O.S.Supp.1996, Ch.18, App., *Rules of the Court of Criminal Appeals.*

■ In the substantive portions of its response, the State first tries to distinguish *Riggs* by claiming it addressed both the statutory changes to the elements of First Degree Murder and the statutory changes to the punishment prescribed therefor, whereas this proceeding only involves statutory changes to the punishment prescribed. However, statutory changes to the elements of Murder in the First Degree were not at issue in *Riggs,*[2] and are not at issue in this

---

**1.** *Riggs* was used in Petitioner's appeal from his original Judgment and Sentence to modify his sentence of Death to a term of Life imprisonment. *Selsor,* 562 P.2d at 927, 931.

**2.** The issue underlying *Riggs* was whether a death sentence returned pursuant to a law, such as 21 O.S.Supp.1973, § 701.3, which imposed a mandatory death penalty either for a broad category of homicidal offenses, or even for a narrower definition of first-degree murder that limited

the categories of killings, constitutes cruel and unusual punishment within the meaning of the Eighth and Fourteenth Amendments. *Woodson v. North Carolina,* 428 U.S. 280, 287, 96 S.Ct. 2978, 2983, 49 L.Ed.2d 944 (1976); *Roberts v. Louisiana,* 428 U.S. 325, 332, 96 S.Ct. 3001, 3005, 49 L.Ed.2d 974 (1976); *see also Green v. Oklahoma,* 428 U.S. 907, 96 S.Ct. 3216, 49 L.Ed.2d 1214 (1976); *Green v. Oklahoma,* 428 U.S. 907, 96 S.Ct. 3216, 49 L.Ed.2d 1214 (1976); *Justus v. Oklahoma,* 428 U.S. 907, 96 S.Ct. 3216, 49 L.Ed.2d 1214 (1976); *Lusty v. Oklahoma,* 428

proceeding.[3] Therefore, *Riggs* cannot be distinguished on that basis. The State's response also contends the brief *ex post facto* analysis presented in *Riggs* was soon revealed to be inaccurate. With this contention we agree.

*Riggs* was decided during the chaos caused when the United States Supreme Court overturned the death penalty statutes of several states, and during the scramble by those states to ensure there were constitutional penalty provisions in place for the offense of Murder in the First Degree. *Riggs*, 554 P.2d at 824–25 nn.1–3. This Court attempted to analyze United States Supreme Court precedent in effect at the time, and determined that Riggs, and other defendants who had committed homicide murder while the statutes with unconstitutional death penalty provisions were in effect, could not be tried under newly enacted statutes. *Riggs*, 554 P.2d at 825. This Court found the evidentiary burden of proof under the newly enacted statutes had been changed to the detriment of Riggs and the other defendants, and to apply the newly enacted statutes to them would be to violate the ex post facto provisions of the Constitution of the United States. *Id.*

After this Court attempted to construe federal *ex post facto* law in *Riggs*, the United States Supreme Court directly addressed the issue of whether the *ex post facto* clause prohibited the application, of newly enacted statutes for imposing the death penalty, to defendants whose crimes were committed prior to the enactment of the new statutes. *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). In its *ex post facto* analysis, the Supreme Court compared the newly enacted statutes to the statutes in effect on the date the crime was committed, even though the old statutes, like Section 701.3, had been declared unconstitutional. The United States Supreme Court held the changes in death penalty statutes were pro-

cedural and on the whole ameliorative, and could be applied retroactively without an *ex post facto* violation. *Id.*

■ In different contexts, this Court has adopted and applied the reasoning and analysis of *Dobbert*. *Cartwright v. State*, 778 P.2d 479 (Okl.Cr.1989). This Court has acknowledged an *ex post facto* argument is not won by proving disadvantage alone. *Cartwright*, 778 P.2d at 482. In addition, the true focus of *ex post facto* analysis is on (1) the elements of the offense, (2) the conditions and quantum of punishment, and (3) the quantity and degree of proof necessary to establish guilt. *Id.*

Contrary to Petitioner's arguments, there was a death penalty statute in effect in 1975, and on the date his crime was committed, in the form of 21 O.S.Supp.1973, § 701.3. Contrary to this Court's analysis in *Riggs*, the newly enacted death penalty statutes did not change the burden of proof to the detriment of Riggs and other defendants, as compared to the burden of proof under Section 701.3. Under Section 701.3, the only available sentence was death. Under newly enacted death penalty statutes, the sentencing options increased in favor of a defendant to include not only death but also the possibility of life imprisonment, and now life without parole. 21 O.S.Supp.1976, §§ 701.9 and 701.10; 21 O.S.1991, § 701.9, and Supp.1996, § 701.10. Under Section 701.3, the State was only required to prove the elements of the crime of First Degree Murder. Once those elements were proven, the State had no further burden of proof because the death penalty was required. Under newly enacted death penalty statutes, the State not only must prove the same elements of the crime of First Degree Murder, but also must prove aggravating circumstances before the death penalty can be imposed. *Id.* Therefore, newly enacted death penalty statutes (1) did not increase the elements of the offense of First

U.S. 907, 96 S.Ct. 3217, 49 L.Ed.2d 1214 (1976); *Davis v. Oklahoma*, 428 U.S. 907, 96 S.Ct. 3217, 49 L.Ed.2d 1215 (1976); *Rowbotham v. Oklahoma*, 428 U.S. 907, 96 S.Ct. 3218, 49 L.Ed.2d 1215 (1976); *Williams and Justus v. Oklahoma*, 428 U.S. 907, 96 S.Ct. 3218, 49 L.Ed.2d 1215 (1976).

3. This proceeding is limited only to those cases, such as Petitioner's, where the elements of Murder in the First Degree were and are satisfied under both Section 701.1 as it then existed, and under Section 701.10 which was subsequently enacted.

Degree Murder, (2) did not increase but in fact decreased the conditions and quantum of punishment, and (3) did not decrease but in fact increased the quantity and degree of proof necessary to establish guilt, and are not *ex post facto*. *Dobbert, supra; Cartwright, supra*. The *ex post facto* analysis and the holdings thereunder in *Riggs v. Branch*, 554 P.2d 823 (Okl.Cr.1976) are hereby overturned.

■ *Ex post facto* analysis only applies to legislative enactments, however, changes in the law by judicial construction, such as overturning *Riggs*, implicates the Due Process Clause and requires consideration of *ex post facto* principles. *Cartwright*, 778 P.2d at 482. This Court has previously addressed the retroactive application of a judicial interpretation of a statute, which changed the law thus allowing independent reweighing of aggravating and mitigating circumstances and denying defendants automatic modification of a death sentence to life imprisonment, and found the Due Process Clause was not violated under an *ex post facto* analysis. *Castro v. State*, 749 P.2d 1146 (Okl.Cr.1987), *cert. denied* 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988). Similarly, the change in law by judicial decision that *Riggs* should be overturned does not violate the Due Process Clause or *ex post facto* principles, because it does not change the crime for which Petitioner is charged, increase the punishment prescribed therefor, or increase the quantity or degree of proof necessary to establish his guilt. *Castro*, 749 P.2d at 1151.

■ Petitioner's equal protection claim can be easily and summarily disposed of. Petitioner is simply no longer similarly situated to those defendants subject to Oklahoma's unconstitutional death penalty statute, 21 O.S.Supp.1973, § 701.3, or to those defendants whose sentences were modified in accordance with *Riggs*. Petitioner's Judgment and Sentence has been vacated and he stands before this Court, similarly situated to defendants awaiting trial under current murder and death penalty statutes. *Dobbert*, 432 U.S. at 301, 97 S.Ct. at 2302, 53 L.Ed.2d at 361; *see also Cheatham v. State*, 900 P.2d 414, 428–30 (Okl.Cr.1995).

■ Finally, we reject Petitioner's claim that to subject him to the death penalty, because his Sixth Amendment right to effective assistance of counsel was violated, flies in the face of due process. Petitioner has not supported this claim with citation to any authority. Rule 3.5(C)(4), *Rules, supra*. Moreover, if a defendant has not been acquitted of the death penalty and his conviction and sentence are reversed on appeal or collateral proceedings, the slate is wiped clean and a defendant may be subjected to any punishment authorized by law, including death. *Salazar v. State*, 919 P.2d 1120, 1127 (Okl.Cr.1996). Finally, subjecting Petitioner to the death penalty does not appear to be punishment for Petitioner's successful attack on his Judgment and Sentence, but merely an application of the correct law, and/or a correction of the applicable law. *See Stafford v. State*, 800 P.2d 738, 740 (Okl.Cr.1990).

**IT IS THEREFORE THE ORDER OF THIS COURT** that the petition for writ of prohibition and/or mandamus should be, and is hereby, **DENIED**. The stay of proceedings in Case No. CF 75–2181 previously imposed by this Court should be, and is hereby, **DISSOLVED**.

**IT IS SO ORDERED.**

/s/ Charles S. Chapel
 CHARLES S. CHAPEL, Presiding Judge

/s/ Reta M. Strubhar
 RETA M. STRUBHAR, Vice Presiding Judge

/s/ Gary L. Lumpkin
 GARY L. LUMPKIN, Judge

/s/ James F. Lane
 JAMES F. LANE, Judge

/s/ Charles A. Johnson
 CHARLES A. JOHNSON, Judge