2000 OK CR 9

**Michael Bascum SELSOR, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–98–531.**

Court of Criminal Appeals of Oklahoma.

April 10, 2000.

Rehearing Denied May 10, 2000.

James C. Bowen, Oklahoma Indigent Defense System, Capital Trial Division, Kent Hudson, Tulsa, for Defendant at Trial.

Steve Sewell and John Priddy, Assistant District Attorneys, for the State at Trial.

Jamie D. Pybas, Julie L. Gardner, Appellate Defense Counsel, Capital Direct Appeals Division, Oklahoma Indigent Defense System, for Appellant on Appeal.

W.A. Drew Edmondson, Attorney General, Robert Whittaker, Assistant Attorney General, for Appellee on Appeal.

## OPINION

CHAPEL, Judge:

¶ 1 On September 19, 1975, Michael Selsor was charged (along with codefendant Richard Dodson) with: First Degree Murder in violation of 21 O.S. Supp.1973, § 701.1 in Tulsa County District Court Case No. CRF–75–2181; Shooting with Intent to Kill in violation of 21 O.S.1971, § 652 in Tulsa County District Court Case No. CRF–75–2182; and Robbery with Firearms in violation of 21 O.S.1971, § 801 in Tulsa County District Court Case No. CRF–75–2183. Selsor was tried by jury and convicted in each case. In accordance with the jury's recommendation, the Honorable William W. Means sentenced Selsor to death for First Degree Murder, twenty (20) years imprisonment for Shooting with Intent to Kill, and twenty-five (25) years imprisonment for Robbery with Firearms. Selsor appealed. On appeal, Selsor's convictions were affirmed, but his death sentence was modified to life imprisonment.[1]

¶ 2 Selsor filed two consecutive applications for post-conviction relief. The Tulsa County District Court denied each application, and this Court affirmed. Selsor·then petitioned for federal habeas relief in the United States District Court for the Northern District of.Oklahoma. After the petition was denied, Selsor appealed to the Tenth Circuit Court of Appeals, which remanded Selsor's petition to the District Court for a hearing.[2] The district court again denied Selsor's petition, and Selsor again appealed. His petition for habeas corpus was granted by the Tenth Circuit, which provided for his retrial "within a reasonable amount of time."[3]

¶ 3 Prior to Selsor's retrial, the State filed a Bill of Particulars alleging four aggravating circumstances to support a sentence of death. Selsor filed a Motion to Strike the Bill of Particulars, asserting that the retroactive application of the current death penalty statutes violated prohibitions against ex post facto laws. After the trial court denied Selsor's motion, he petitioned this Court for a Writ of Prohibition and/or Mandamus. This Court issued a stay, ordered a response from the district court, then denied Selsor's petition on the merits.[4]

¶ 4 Selsor was tried by jury and convicted of First Degree Murder in violation of 21 O.S.Supp.1973, § 701, Shooting with Intent to Kill in violation of 21 O.S.1971, § 652, and Robbery with Firearms in violation of 21 O.S.1971, § 801. The jury found two aggravating circumstances: i, that Selsor knowingly created a great risk of death to more than one person; and ii, that Selsor committed the murder to avoid or prevent lawful arrest. In accordance with the jury's recommendation, the Honorable E.R. Turnbull sentenced Selsor to death for First Degree Murder, life imprisonment for Shooting with Intent to Kill, and twenty (20) years imprisonment for Robbery with Firearms.

## FACTS

¶ 5 At approximately 11:00 p.m. on September 15, 1975, Selsor and Richard Eugene Dodson robbed the U–TOTE–M convenience store at 5950 33rd West Avenue in Tulsa. Selsor and Dodson entered the store, each

1. *Selsor v. State,* 1977 OK CR 141, 562 P.2d 926.

2. *Selsor v. Kaiser,* 22 F.3d 1029 (10th Cir.1994).

3. *Selsor v. Kaiser,* 81 F.3d 1492 (10th Cir.1996).

4. *Selsor v. Turnbull,* 1997 OK CR 61, 947 P.2d 579.

armed with a .22 caliber handgun. Employee Clayton Chandler was working at the cash register. Selsor approached Chandler, pulled his gun, and demanded the contents of the register. Dodson located employee Ina Morris, who was restocking the walk-in cooler. Dodson pointed his gun at her and ordered her to get down. Morris replied, "You've got to be kidding me." Dodson then fired a shot striking Morris in the shoulder.

¶ 6 Chandler loaded a sack with money and handed it to Selsor, who then shot Chandler several times in the chest killing him. Upon hearing the shots, Dodson emptied his weapon through the cooler door at Morris. Morris was shot in the head, neck and shoulder, but survived. Selsor and Dodson then fled.

¶ 7 On September 22, 1975, Selsor and Dodson were arrested in Santa Barbara, California. Selsor confessed this and other crimes to Detective John Evans of the Santa Barbara Police Department. In his confession, Selsor admitted that before entering the store, he and Dodson had agreed to leave no witnesses.

### ISSUES RELATING TO JURY SELECTION

¶ 8 Selsor asserts in Proposition VII that he was denied a fair trial and a reliable sentencing determination because the trial court denied his motion for individual *voir dire*. In overruling the motion at the hearing, the trial court nevertheless stated that it would keep the motion under advisement should a need for individual *voir dire* arise at trial. Such matters fall within the trial court's discretion.[5]

¶ 9 Selsor specifically complains that he was prejudiced by the denial of individual *voir dire* after four members of the panel, purportedly educated by previous venire persons on how to avoid jury service, were successful in being excused. Upon learning what was occurring, the trial court admonished prospective jurors to answer questions honestly, because based upon past experience jurors may have answered questions untruthfully to avoid jury service. To Selsor, these facts establish that "one cannot be confident that the jury was picked fairly."

¶ 10 Selsor's argument is speculative. He has not established that the trial court abused its discretion or that he was prejudiced. The jury was selected fairly. Selsor's attorneys extensively questioned the prospective jurors. Selsor was presumably satisfied with the selection process and result because he did not renew his request for individual *voir dire* or exercise all of his peremptory challenges at trial. This proposition is denied.

### ISSUES RELATING TO SELSOR'S RETRIAL AND THE EX POST FACTO CLAUSE

¶ 11 In Propositions I–V, Selsor makes several interrelated arguments that he was not eligible to be sentenced to death and that he was tried pursuant to the wrong First Degree Murder statute. Specifically, Selsor argues that his conviction and death sentence violated the State and Federal Constitutions because: i, the retroactive application of the current death penalty statute violated *ex post facto* laws; ii, the retroactive application of the current death penalty statute violated *ex post facto* provisions, the multiple punishments provision of the Double Jeopardy Clause, and principles of equal protection and due process; iii, the retroactive application of this Court's decision overruling *Riggs v. Branch* violated due process; iv, sentencing Selsor to death violated the fundamental fairness doctrine; and v, the Information did not inform Selsor of the homicide theory upon which the State would rely to obtain a conviction, and the jury instructions were defective because they did not identify all the elements of the offense with which he was charged.

¶ 12 Selsor has previously litigated some of these issues due to the unique procedural

---

5. *Ochoa v. State*, 1998 OK CR 41, 963 P.2d 583, 593, *cert. denied*, 526 U.S. 1023, 119 S.Ct. 1263, 143 L.Ed.2d 358 (1999). Selsor also briefly argues that individual *voir dire* should always be required when requested for death qualification of a jury. While it is probably better and safer to question jurors individually regarding their beliefs concerning the death penalty, it is not required and is discretionary with the trial court.

history of his case. In 1975, Selsor was charged with First Degree Murder, Shooting with Intent to Kill, and Robbery with Firearms. Selsor was tried, convicted of all three charges, and sentenced to death for the murder charge. On appeal, Selsor's conviction was affirmed, but his death sentence was modified to life imprisonment due to the unconstitutionality of the then-existing death penalty statute, 21 O.S.Supp.1973, § 701.3.[6] Selsor thereafter attacked his convictions and sentences for approximately twenty (20) years in state and federal court and finally won a new trial.[7] He was held pending retrial on the original Information charging him with First Degree Murder in violation of 21 O.S.Supp.1973, 701.1(2). The State sought the death penalty on retrial. Selsor filed a Motion to Strike, asserting that since there was no valid death penalty statute in effect when he allegedly committed First Degree Murder, to expose him to the death penalty on retrial would violate constitutional prohibitions against *ex post facto* laws. Selsor petitioned this Court for relief after the district court denied his Motion to Strike. In denying Selsor's petition,[8] this Court rejected several issues he once again pursues in this appeal.

¶ 13 Precisely as in *Selsor v. Turnbull*, Selsor here argues in Proposition II that the retroactive application of the current death penalty statute violates *ex post facto* provisions and equal protection. This Court's analysis in *Selsor v. Turnbull* is dispositive. First, this Court determined that the retroactive application of the current death penalty statutes did not violate the *ex post facto* provisions of the State and Federal Constitutions because the "newly enacted death penalty statutes (1) did not increase the ele-

ments of First Degree Murder, (2) did not increase but in fact decreased the conditions and quantum of punishment, and (3) did not decrease but in fact increased the quantity and degree of proof necessary to establish guilt."[9]

¶ 14 Second, this Court denied Selsor's equal protection claim, as he was

simply no longer similarly situated to those defendants subject to Oklahoma's unconstitutional death penalty statute, 21 O.S.Supp.1973, § 701.3, or to those defendants whose sentences were modified in accordance with *Riggs*. [Selsor's] Judgment and Sentence has been vacated and he stands before this Court similarly situated to defendants awaiting trial under current murder and death penalty statutes.[10]

¶ 15 In *Selsor v. Turnbull*, this Court also anticipated and resolved two issues Selsor failed specifically to raise then but which he raises now in Propositions II and III, respectively: i, whether the retroactive application of the current death penalty statute violated the multiple punishments provision of the Double Jeopardy Clause; and ii, whether the retroactive application of this Court's decision overruling *Riggs v. Branch* violated due process. This Court resolved the double jeopardy issue, finding that "if a defendant has not been acquitted of the death penalty and his conviction and sentence are reversed on appeal or collateral proceedings, the slate is wiped clean, and a defendant may be subjected to any punishment authorized by law, including death."[11] This Court also found that the retroactive application of this Court's decision overruling *Riggs v. Branch* to this case did not violate due process.[12] We specifically stated: "the change in law by

---

6. See *Selsor*, 562 P.2d at 927.

7. See *Selsor*, 81 F.3d at 1492.

8. See *Selsor*, 947 P.2d at 583, *overruling Riggs v. Branch*, 1976 OK CR 216, 554 P.2d 823.

9. *Selsor*, 947 P.2d at 582–83; citing *Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). *See also Collins v. Youngblood*, 497 U.S. 37, 45, 110 S.Ct. 2715, 2720, 111 L.Ed.2d 30 (1990) (generally procedural changes in the law that disadvantage a defendant do not violate the *Ex Post Facto* Clause).

10. *Selsor*, 947 P.2d at 583.

11. *Id.*, citing *Salazar v. State*, 1996 OK CR 25, 919 P.2d 1120, 1127, *cert. denied*, — U.S. —, 120 S.Ct. 226, 145 L.Ed.2d 190 (1999). Additionally, contrary to Selsor's argument, his slate was wiped clean because his conviction and sentence were not reversed due to insufficient evidence.

12. *Id.*

judicial decision that *Riggs* should be overturned does not violate due process ... because it does not change the crime for which [Selsor] is charged, increase the punishment prescribed therefore, or increase the quantity, or degree of proof necessary to establish his guilt."[13]   In sum, Selsor's arguments in Propositions II and III were adequately resolved in *Selsor v. Turnbull*; nothing in his brief is convincing or persuasive enough to change those results.[14]

¶ 16 In Proposition I, Selsor argues that the *ex post facto* provisions of the federal and state constitutions were violated because he was tried in 1998 pursuant to the First Degree Murder statute (21 O.S.1991, § 701.7(A)) in effect then rather than the statute in effect when he allegedly committed the crime (21 O.S.Supp.1973, § 701).   In Proposition V, he asserts that his jury was mis-instructed on the applicable elements of First Degree Murder and that the Information did not adequately notify him of the charges against which he had to defend.   We address these propositions together and conclude that they both lack merit.

¶ 17 This Court focuses on the following factors when determining whether there has been an *ex post facto* violation: i, the elements of the offense; ii, the conditions and quantum of punishment;  and iii, the quantity and degree of proof necessary to establish guilt.[15]   Although the elements of First Degree Murder and the burden of proof contained in the 1973 statute (under which Selsor was charged) differ from those contained in the current statute, Selsor's jury was instructed on all the elements of First Degree Murder under the 1973 statute.

¶ 18 While all elements of First Degree Murder under the 1973 statute were not contained within Instruction 9, they were included within the instructions as a whole.[16]   Instruction 18 correctly informs the jury on the elements of Robbery with Firearms. The essential elements of that offense are the same under the statute applicable at the time of Selsor's crime (21 O.S.1971, § 801) and the current statute (21 O.S.1991, § 801).[17]   Thus, considering Instructions 9 and 18 together indicates that Selsor's jury was instructed upon and found him guilty of all the elements of First Degree Murder under the applicable 1973 statute.   As such, the defendant was not convicted under a lesser burden of proof, and under these circumstances, we do not find a violation of the *ex post facto* provisions of the State and Federal constitutions.[18]

13.  *Id.*

14.  *Alverson v. State*, 1999 OK CR 21, 983 P.2d 498, 506, *cert. denied*, —— U.S. ——, 120 S.Ct. 820, 145 L.Ed.2d 690 (2000) (issues previously raised by defendant in an extraordinary writ and decided on merits will not be reconsidered on appeal).

15.  *Cartwright v. State*, 1989 OK CR 41, 778 P.2d 479, 482, *cert. denied*, 497 U.S. 1015, 110 S.Ct. 3261, 111 L.Ed.2d 771 (1990); *Coleman v. Saffle*, 869 F.2d 1377, 1386 (10th Cir.1989), *cert. denied*, 494 U.S. 1090, 110 S.Ct. 1835, 108 L.Ed.2d 964 (1990).

16.  Pursuant to 21 O.S.Supp.1973, § 701.1, the jury had to find that Selsor (1) killed a human being, (2) with a premeditated design to effect death, (3) without authority of law, (4) while committing robbery with a firearm. In Instruction 9, Selsor's jury was instructed on First Degree Murder pursuant to 21 O.S.1991, § 701.7(A), under which the jury had to find that Selsor (1) unlawfully caused the death of a human, (2) with malice aforethought.   While it appears that the "premeditated design" and "malice aforethought" elements differ, this Court has concluded they are interchangeable.   *Con-*

*over v. State*, 1997 OK CR 6, 933 P.2d 904, 910. Additionally, the murder had to be committed in the course of the robbery.  Instructions 9 and 18 omit this requirement.  However, this was harmless beyond a reasonable doubt because the facts at trial established Selsor committed the murder in the course of the robbery.

17.  21 O.S.1971, § 801 and 21 O.S.1991, § 801 provide in pertinent part:
     Any person or persons who, with the use of any firearms ... robs any person or persons, or ... place of business ... either day or night, shall be guilty of a felony.

18.  In a perfect trial, these elements should have been in one instruction to strictly comply with 21 O.S.Supp.1973, § 701, and Selsor would have been sentenced as he was by the jury consistent with the current death penalty statutes.  *See Dobbert*, 432 U.S. at 292, 97 S.Ct. at 2298.  While not perfect, the trial was fair; Selsor was not harmed in any way by the separation of the elements within two instructions.  *McGregor v. State*, 1994 OK CR 71, 885 P.2d 1366, 1380, *cert. denied*, 516 U.S. 827, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995) ("Jury instructions are sufficient if, taken as a whole, they accurately state the applicable law.").

¶ 19 Our disposition of Proposition I resolves the arguments Selsor raises in Proposition V. Selsor was charged, tried, and convicted pursuant to the original Information filed in the case, which correctly informed him of the 1973 statute and facts supporting its alleged violation.[19] The Information was therefore sufficient. Moreover, Selsor's jury was properly instructed and found all elements of First Degree Murder pursuant to the correct statute.[20] This proposition is denied.

¶ 20 However, as the State concedes, Selsor's Robbery with Firearms conviction must be dismissed based upon double jeopardy because all the elements of Robbery with Firearms are included within the elements of the First Degree Murder pursuant to the 1973 statute.[21] Thus, Selsor's conviction for Robbery with Firearms is reversed and remanded with instructions to dismiss.

¶ 21 In Proposition IV, Selsor argues that sentencing him to death based upon the "unique situation present in this case" is fundamentally unfair.[22] To be fundamentally unfair and violate due process, the infraction must "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples toward those charged with the most heinous offenses." [23] Here, Selsor was on notice and warned of the possibility of a death sentence based upon the original charge. Selsor then availed himself of the appeal process and gained a new trial, where he could have been acquitted and released or convicted and sentenced to death. Selsor knew the risks and benefits before he began the appellate process; he received a fair trial, and his punishment is consistent with the penalties he was warned of when he was charged.

¶ 22 In Proposition VI, Selsor argues that the state and federal constitutional prohibitions against *ex post facto* laws were violated when he was sentenced to life imprisonment based upon the punishment provisions of the current Shooting with Intent to Kill statute. The State concedes this error in its brief.

¶ 23 Selsor was charged with violating 21 O.S.1971, § 652 ("the 1971 statute"), which was in effect at the time of the offense. The maximum possible punishment pursuant to the 1971 statute was twenty (20) years imprisonment. However, Selsor's jury was instructed that the maximum punishment was life imprisonment based upon 21 O.S.1991, § 652—the current Shooting with Intent to Kill statute. The jury recommended that Selsor receive the maximum punishment of life imprisonment, and that sentence was imposed by the trial court. Thus, the *Ex Post Facto* Clause was violated because the sentence imposed exceeded the maximum allowable at the time of the offense.[24] Accordingly, Selsor's sentence for Shooting with Intent to Kill is modified from life imprisonment to twenty (20) years imprisonment.

## ISSUES RELATING TO PUNISHMENT

¶ 24 Selsor argues in Proposition IX that at least three errors occurred in the State's admission of victim impact evidence at trial: i, Ina Morris's testimony was inadmissible because she was not a "family member", and the notice and hearing procedures were not

19. *See Parker v. State*, 1996 OK CR 19, 917 P.2d 980, 986, *cert. denied*, 519 U.S. 1096, 117 S.Ct. 777, 136 L.Ed.2d 721 (1997). The purpose of an Information is to provide notice of what charges a defendant must defend. The Information in this case provided full and complete notice stating the correct charge and applicable facts in full compliance with due process. Selsor was well aware of the charges against which he was to defend.

20. *McGregor*, 885 P.2d at 1380.

21. *Hamilton v. State*, 1997 OK CR 14, 937 P.2d 1001, 1008–09, *cert. denied*, 522 U.S. 1059, 118 S.Ct. 716, 139 L.Ed.2d 657 (1998).

22. Br. of Appellant at 56.

23. *Wallace v. State*, 1995 OK CR 19, 893 P.2d 504, 518, *cert. denied*, 516 U.S. 888, 116 S.Ct. 232, 133 L.Ed.2d 160 (Chapel, J., specially concurring) (citations omitted).

24. Applegate v. State, 1995 OK CR 49, 904 P.2d 130, 134 (changing the punishment to inflict a greater punishment than that in effect when the crime was committed violates *Ex Post Facto* Clause).

followed as required by *Cargle v. State*;[25] ii, the other victims' testimony was prejudicial because it focused on their emotional loss, and its probative value was substantially outweighed by its undue prejudice; and iii, victim impact evidence is an unconstitutional "super" aggravating circumstance present in every capital case.

¶ 25 Selsor argues that Ina Morris's testimony was inadmissible as victim impact evidence because she was not a "family member" of the victim.[26] Indeed, portions of Morris's testimony were inadmissible for this reason,[27] such as the psychological and emotional impact the shooting had upon Morris's life.[28] However, most of her testimony was admissible to support the "knowingly created a great risk of death to more than one person" aggravating circumstance, as disclosed by the State in its notice of evidence in aggravation.[29] Morris's testimony concerning being shot and the medical attention she received for her injuries was clearly relevant to the "great risk of death to more than one person" aggravating circumstance.

¶ 26 Selsor did not timely object to this inadmissible evidence, waiving all but plain error.[30] The inadmissible portions of Morris's testimony did not go to the foundation of Selsor's case or take from him a substantial right.[31] Since the Court finds all of Morris's testimony either admissible to support the aggravating circumstances or inadmissible

victim impact evidence, the Court need not address whether the *Cargle* notice and hearing procedures were satisfied because *Cargle* is inapposite.

¶ 27 Selsor next argues that a portion of the victim impact evidence introduced through Debbie Huggins and Anne Chandler was prejudicial because it focused solely on the emotional impact of the victim's murder on those testifying. Selsor accordingly contends that the evidence should not have been admitted at trial because its prejudicial effect substantially outweighed its probative value. Selsor overstates his case. There was nothing inflammatory or prejudicial about the victim impact evidence introduced through Ms. Huggins and Ms. Chandler. This victim impact evidence, taken as a whole, fairly and concisely encompassed the financial, emotional, psychological, and physical effects of the murder on them and the uniqueness of the victim.[32] There was no error in its admission.

¶ 28 Selsor concludes by arguing that victim impact evidence is a "super" aggravating circumstance present in every capital case, and adds that victim impact evidence negates the constitutionally-required narrowing function for Oklahoma's death penalty sentencing scheme. This issue has been addressed and rejected by this Court,[33] and Selsor's argument fails to persuade us otherwise.

---

**25.** 1995 OK CR 77, 909 P.2d 806, 828, *cert. denied*, 519 U.S. 831, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996).

**26.** 21 O.S.Supp.1992, § 701.10 (State may introduce evidence about the victim and about the impact of the murder on the family of the victim).

**27.** *See Gilbert v. State*, 1997 OK CR 71, 951 P.2d 98, 117, *cert. denied*, 525 U.S. 890, 119 S.Ct. 207, 142 L.Ed.2d 170 (1998) (victim impact evidence restricted by statute to impact of homicide on victim's family members for homicide on trial); *see also* 21 O.S.Supp.1992, § 701.10.

**28.** Morris should not have testified that after the shooting it took four or five years of counseling for her to be able to function because of her fear and nightmares.

**29.** The State also alleged in the notice that some of Morris's testimony would support the heinous, atrocious and cruel aggravating circumstance.

However, Morris's testimony only marginally, if at all, supported this aggravating circumstance. The majority of her testimony supported the great risk of death aggravating circumstance.

**30.** Selsor did later move to strike the testimony and for mistrial. This was shortly after the district court's statement that it found some of Morris's testimony objectionable. The district court overruled the Motion to Strike as untimely.

**31.** *See* 20 O.S.1991, § 3001.1; *Malicoat v. State*, 2000 OK CR 1, ¶ 34, 992 P.2d 383.

**32.** *See* 22 O.S.Supp.1993, § 984; *Cargle*, 909 P.2d at 828.

**33.** *Mollett v. State*, 1997 OK CR 28, 939 P.2d 1, 12, *cert. denied*, 522 U.S. 1079, 118 S.Ct. 859, 139 L.Ed.2d 758 (1998); *Cargle*, 909 P.2d at 826.

¶ 29 Selsor argues in Proposition X that the aggravating circumstance of "knowingly creating a great risk of death to more than one person" is unconstitutionally vague because it does not properly narrow the jury's sentencing decision. This aggravating circumstance has been found constitutional as defined and applied,[34] and Selsor offers no new arguments for reconsidering that conclusion. Selsor continues by arguing that even if constitutionally valid, the evidence was insufficient to prove beyond a reasonable doubt the applicability of this aggravating circumstance to his case.

¶ 30 This Court views the evidence supporting an aggravating circumstance in a light most favorable to the State to determine whether any rational trier of fact could have found the facts necessary to support it beyond a reasonable doubt.[35] This Court reviews the record to determine if a defendant created a great risk of death to another in close proximity, in time and intent, to the murder.[36] Under these standards, the evidence here was sufficient.

¶ 31 Selsor and Dodson agreed before entering the store to leave "no witnesses." Store employees Chandler and Morris were the only people present at the time of the robbery. Upon completing the robbery, Selsor shot and killed Chandler, and Dodson repeatedly shot Morris. Morris was undoubtedly at risk of death in terms of time, intent and location to Chandler's murder.

¶ 32 However, Selsor argues that Dodson's actions cannot be imputed to him in determining the sufficiency of the evidence for this aggravating circumstance. Selsor and Dodson aided and abetted each other in this murder, shooting, and robbery. If crim-inal liability can attach for a codefendant's act that a defendant has aided and abetted, liability for an aggravating circumstance can also attach for a codefendant's act that a defendant has aided and abetted.[37] Had Morris died, Selsor could have been convicted of her murder; that fact alone would have established this aggravating circumstance.[38]

¶ 33 In Proposition XI, Selsor argues that the use of inadmissible and prejudicial evidence to support the "continuing threat" aggravating circumstance improperly contributed to his death verdict even though the jury did not find this aggravating circumstance to exist. Selsor's argument fails. Assuming, as Selsor argues, that his confession to the two uncorroborated robberies was inadmissible and that the evidence concerning the Wilson robbery was cumulative and unnecessarily prejudicial, it did not contribute to his death verdict.

¶ 34 Selsor's jury found two aggravating circumstances: i, that Selsor knowingly created a great risk of death to more than one person; and ii, that the murder was committed for the purpose of avoiding or preventing a lawful arrest.[39] The record establishes that both of these aggravating circumstances were proven by the facts of this murder and robbery and not any of the evidence complained of by Selsor.[40] Accordingly, we conclude beyond a reasonable doubt that the jury's death verdict was not affected by the admission of the evidence supporting the continuing threat aggravating circumstance.

## ISSUES RELATING TO BOTH STAGES OF TRIAL

¶ 35 In Proposition VIII, Selsor asserts in five sub-propositions that repeated instances

---

34. *Valdez v. State*, 1995 OK CR 18, 900 P.2d 363, 382, *cert. denied*, 516 U.S. 967, 116 S.Ct. 425, 133 L.Ed.2d 341.

35. *Salazar*, 919 P.2d at 1123.

36. *Valdez*, 900 P.2d at 382.

37. *Ochoa*, 963 P.2d at 604.

38. *Id.*

39. *Id.*

40. *Le v. State*, 1997 OK CR 55, 947 P.2d 535, 555, *cert. denied*, 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998)(prosecutor's argument directed at aggravating circumstance harmless error when jury did not find aggravating circumstance); *Romano v. State*, 1995 OK CR 74, 909 P.2d 92, 118, *cert. denied*, 519 U.S. 855, 117 S.Ct. 151, 136 L.Ed.2d 96 (1996) (appellant not prejudiced by "overall effect" of presenting evidence regarding the continuing threat aggravating circumstance rejected by the jury because other aggravating circumstances supported by sufficient independent evidence).

of prosecutorial misconduct denied him a fair trial. However, none of the instances of alleged misconduct were objected to, waiving all but plain error. Additionally, the parties "have wide latitude in closing arguments to discuss the evidence and reasonable inferences and this Court will grant relief only where grossly improper and unwarranted arguments affects the defendant's rights."[41]

¶ 36 Selsor first submits that the prosecutor's comment that the first shot (which was fired by Dodson) was only a warning was erroneous. To Selsor, this misled the jury into believing that he was more culpable than Dodson. The record reveals that the comment was a reasonable inference from the evidence. The testimony indicates that Dodson fired the first shot so that Morris would comply with his commands. Thus, Dodson's first shot could fairly be characterized in argument as a "warning."

¶ 37 Selsor contends that the prosecutor improperly evoked sympathy for the victims in *voir dire* and first stage closing argument. The colloquy in *voir dire* and comment in closing argument were not objected to waiving all but plain error. None of the comments affected Selsor's rights nor went to the foundation of the case; most were proper and were based upon the evidence.

¶ 38 Selsor also contends that the prosecutor demeaned his mitigation evidence by arguing facts outside the record. The prosecutor's arguments were fair challenges to Selsor's mitigating evidence. Moreover, the comments were not based upon facts outside the record but were reasonable inferences and arguments from the facts adduced at trial. There was no error.

¶ 39 Selsor argues that the prosecutor improperly compared the advantages of Selsor's life in prison to the plight of the dead victim. These comments by the prosecutor are not error. Instead, they fairly commented on Selsor's mitigation evidence and merely asked the jury to consider what Selsor's life was like and would be like in prison based upon the evidence at trial in determining the appropriate punishment. This is proper argument.

¶ 40 Selsor asserts that the prosecution argued the improperly elicited victim impact testimony from Ina Morris discussed in Proposition IX, *supra*. The brief argument about which Selsor complains does focus somewhat on the inadmissible portions of Morris's testimony.[42] However, the prosecutor cannot be condemned for arguing the evidence as admitted at trial. Moreover, as found in Proposition IX, this evidence did not deny Selsor a fair trial or contribute to the jury's sentencing decision. The same can be said for the prosecutor's argument concerning this evidence.

¶ 41 Selsor concludes by arguing that the combined effect of the prosecutor's misconduct denied him a fair trial. Having found none of the comments were made in error or prejudicial, their combination did not prejudice Selsor or deny him a fair trial. This proposition is denied.

¶ 42 Selsor claims in Proposition XII that he was denied effective assistance of trial counsel. Selsor must show that counsel's performance was deficient and that he was prejudiced as a result.[43] To prove deficient performance, Selsor must overcome the strong presumption that counsel's representation "fell within a wide range of reasonable professional assistance and equaled sound trial strategy."[44] This Court views counsel's challenged conduct on the facts of the case as seen at the time to determine if it was professionally unreasonable, and if so, will determine whether the result of the proceeding was fundamentally unfair or unreliable.[45]

¶ 43 Selsor first asserts that if this Court finds that trial counsel waived the allegations of errors raised in Propositions I and V, then trial counsel was ineffective. This Court denied the asserted errors in Propositions I and V on their merits. Thus, trial counsel's

**41.** *Le,* 947 P.2d at 554.

**42.** *See* Proposition IX, *supra*.

**43.** *Malicoat,* 2000 OK CR 1, ¶ 48, 992 P.2d 383.

**44.** *Id.*

**45.** *Id.*

performance was not deficient, and Selsor was not prejudiced.

¶44 Selsor next complains that counsel was ineffective for failing to object to several instances of prosecutorial misconduct and inadmissible victim impact evidence. In Proposition VIII, we determined that the prosecutor's comments were not error. In Proposition IX, we noted that portions of Ina Morris's testimony were inadmissible but did not affect the jury's sentencing decision. Thus, Selsor's counsel's failure to object to the prosecutor's arguments or to nonprejudicial victim impact evidence does not constitute ineffective assistance.[46]

¶45 Selsor next asserts counsel's performance was deficient for failing to object to the constitutionality and applicability of the "great risk of death" aggravating circumstance. As discussed in reviewing Proposition X, this aggravating circumstance is constitutional. Since there was sufficient evidence to support it in this case, counsel was not ineffective.

¶46 Selsor concludes by arguing counsel was ineffective for failing to specifically object at trial to inadmissible and prejudicial evidence offered in support of the "continuing threat" aggravating circumstance.[47] Selsor asserted that the admission of this evidence was error in Proposition XI. For the reasons asserted in Proposition XI, assuming Selsor could establish that his counsel's performance was deficient, he was not prejudiced. Accordingly, this proposition is denied.

¶47 In Proposition XIII, Selsor argues that he is entitled to relief due to the accumulation of error in the case. While we have determined that Selsor's Robbery with Firearms conviction must be reversed and remanded with instructions to dismiss and that Selsor's sentence for Shooting with Intent to Kill must be modified to twenty (20) years, none of the other individual errors affected a substantial right, went to the foundation of the case, or contributed to the jury's verdicts. Further, when these errors are considered cumulatively, they do not require relief.[48] This proposition is denied.

## MANDATORY SENTENCE REVIEW

¶48 In accordance with 21 O.S.1991, § 701.13(C), we must determine: i, whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and ii, whether the evidence supports the jury's finding of aggravating circumstances. Based upon the record, we cannot say Selsor's death sentence was imposed because the jury was influenced by passion, prejudice, or any other arbitrary factor contrary to 21 O.S.1991, § 701.13(C).

¶49 The jury was instructed on four aggravating circumstances and found the existence of two: i, that Selsor knowingly created a great risk of death to more than one person; and ii, that Selsor committed the murder to avoid or prevent lawful arrest. Selsor presented evidence that he had been a model prisoner during his twenty-plus years in the prison system. Several Department of Correction employees testified that despite their belief in the death penalty, Selsor did not deserve it, was involved in various prison programs, and was honest and hardworking. The jury was also instructed on twelve (12) mitigating factors. Upon our review of the record, we find the sentence of death to be factually substantiated and appropriate.

STRUBHAR, P.J., LUMPKIN, V.P.J., and JOHNSON, J., concur.

LILE, J., concurs in results.

---

46. *See Valdez*, 900 P.2d at 388.

47. Additionally, Selsor's counsel objected to most of the evidence complained of in Proposition XI.

48. *Bryan v. State*, 1997 OK CR 15, 935 P.2d 338, 365–66, *cert. denied*, 522 U.S. 957, 118 S.Ct. 383, 139 L.Ed.2d 299 (1997).