**Barbara June SKELLY, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–91–747.**

Court of Criminal Appeals of Oklahoma.

Aug. 25, 1994.

Larry Bonnell, Purcell, defense counsel, for appellant, at trial and on appeal.

Gary Barger, Asst. Dist. Atty., Purcell, Prosecutor, at trial.

Susan B. Loving, Atty. Gen., Dan Connally, Asst. Atty. Gen., Oklahoma City, for appellee, on appeal.

## OPINION

LANE, Judge:

Barbara June Skelly, appellant, and her husband, Jimmie Lee Skelly, were tried jointly by jury and convicted of the crime, Possession of Marijuana With Intent to Distribute After Former Conviction of a Felony (63 O.S.Supp.1989, § 2–401(A)) in McClain County District Court Case Nos. CRF–90–41 and 42. The jury set punishment for each of them at twelve (12) years in the custody of the Oklahoma Department of Corrections, and the trial court sentenced accordingly. Mr. Skelly's case is not consolidated on appeal. We reverse and remand for new trial on three grounds: the trial court's failure to enforce its discovery order, admission of inadmissible evidence, and prosecutorial misconduct.

This case began as a routine night-time traffic stop based on a broken tag light. Mr. and Mrs. Skelly were driving on South Green in Purcell when Purcell Police Officer Moule noticed the tag light on the Skelly car was not working. He turned on his overhead lights to stop them and they pulled into the parking lot of the Uptown Motel. When Officer Moule approached the car he smelled marijuana smoke. When Mr. Skelly, the driver, could not produce insurance verification he was taken to the squad car. A routine records check revealed Skelly had not properly transferred title of the car.

Meanwhile back-up Officer Jones arrived, shined his flashlight into the car and saw a hand-rolled marijuana cigarette in the ashtray. Officer Jones relayed this information to Officer Moule who then arrested Mr. Skelly for the vehicle related violations and possession of marijuana.

Officer Jones then asked Mrs. Skelly to get out of the car and saw a rolled up plastic bag which resembled customary marijuana packaging in her open handbag. Mrs. Skelly closed her handbag as she exited the car, and twice refused the officer's request to search it.

Officer Kitten and his trained drug detecting dog, Scrapper, were then called to the scene to further the investigation. They arrived within twenty minutes. Appellant placed her handbag on the ground in response to Officer Jones' request to let Scrapper sniff it. Scrapper gave the "alert" response and the appellant was arrested. A search warrant was later obtained to search the handbag. The search yielded eighteen (18) grams of marijuana packaged in three baggies and a film can containing butts of marijuana cigarettes and rings.

Scrapper then sniffed the car and hit on each side between the doors. The car was impounded, and an inventory search yielded a small brown case containing a set of scales, and the butt of the marijuana cigarette from the ashtray which had been seen earlier.

The next day Scrapper sniffed the car again, and again hit on each side between the doors. A search warrant was obtained for the car. This search yielded a plastic baggie containing 10 plastic bags of viable marijuana seeds in the pocket of a coat on the front seat. The seeds weighed 20 grams.

A third warrant was obtained for Room 5 of the Uptown Motel where the appellant and her husband were staying. Seven (7) grams of marijuana were found in the pockets of clothing hanging there.

▮▮▮ Appellant argues in her first several propositions of error that the trial court erred by overruling her Motion to Suppress the butt of the "joint", marijuana, marijuana seeds, and the scales. We will discuss the issues raised in their chronological order. Appellant argues the initial traffic stop was a mere pretext and subterfuge for the drug search. By definition a pretextual stop lacks probable cause and thus would be illegal. See Johnson v. State, 92 Okla.Crim. 63, 220 P.2d 469 (1950); Bagwell v. State, 327 P.2d 479 (Okl.Cr.1958); Fields v. State, 463 P.2d 1000 (Okl.Cr.1970). The officer's articulated reason for stopping the Skelly car, that the tag light was out, is a traffic violation committed in his presence. This traffic violation provided probable cause for the initial stop. See 47 O.S.1981, § 12–204(c).

We do not reach Appellant's claim that the sniffing of her handbag by Scrapper, a trained drug detecting dog, was a warrantless, non-consensual search prohibited by the Fourth Amendment due to the fact that the officer's personal observations of the contraband in the car and the purse as Appellant exited the car was sufficient to comply with the "plain view" exception. *See, Roney v. State*, 819 P.2d 286 (Okl.Cr.1991) (discussion of the current elements of the plain view exception).

This does not end our inquiry, for the Fourth Amendment protects people from both unreasonable searches *and* unreasonable seizures.

A seizure of a person occurs within the meaning of the Fourth Amendment when, in light of all the attendant circumstances, a reasonable person would have believed he was not free to leave. *U.S. v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). Such a seizure of property occurs upon a meaningful interference with a person's possessory interest in that property. *U.S. v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The Supreme Court developed the analytical framework for our present inquiry over the space of fifteen years. In *Terry v. Ohio* the Court distinguished investigatory stops requiring only reasonable suspicion that a person was armed and dangerous from arrests which require probable cause. The Court expanded the *Terry* rationale to include investigatory stops based on reasonable suspicion of illegal drug activity in *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). The *Terry–Royer* reasonable suspicion exception developed further in *U.S. v. Place* to apply to the temporary detention of persons and personal effects for the purpose of conducting limited investigations, including sniffs by trained drug-detecting dogs. *See* 462 U.S. at 702, 103 S.Ct. at 2641. To remain within the *Place* reasonable suspicion exception, the du-

ration of the seizure must be "minimally intrusive" as well. 462 U.S. at 709, 103 S.Ct. at 2645.

Turning to the facts of this case, it is plain the appellant and her handbag were seized when the traffic stop was extended to bring in the drug dog team. At that point in time she was not free to go and the focus of the police investigation cast a long shadow across her privacy interest in the handbag. These seizures fall within the *Terry–Royer–Place* exception only if the officers had a reasonable suspicion appellant was involved with a drug transaction of some kind. The marijuana smoke wafting from the interior of the car, the joint in the car ashtray, and the rolled up plastic bags seen by Officer Jones in the appellant's handbag were sufficient to support the officer's reasonable suspicion necessary for these seizures.

This does not end our analysis for a seizure which initially comports with the mandates of the Fourth Amendment may nevertheless develop to unconstitutional proportions if it becomes unreasonably intrusive due to a lack of police diligence or other acts which lead to unnecessary delay. *See U.S. v. Place, Id.* In the present case the appellant was forced to wait approximately twenty minutes for the dog team to arrive. This response time by the dog team to a traffic stop is completely reasonable under the circumstances and does not offend the Fourth Amendment.

The inventory search of Appellant's car is challenged next. Appellant asserts the impoundment of the car was not accomplished pursuant to Purcell City Ordinance § 18–29, and thus the fruit of the resulting inventory search should have been suppressed. The State concedes the impoundment from private property was not requested by the property owner as required by Purcell City Ordinance § 18–29 but asserts this error is harmless for no evidence discovered by the inventory search was admitted at trial.

It is true impoundments must be conducted in strict compliance with applicable law in order for the consequent inventory

search to be legal *Kelly v. State*, 607 P.2d 706 (Okl.Cr.1980). However, suppression is required only for those fruits of the inventory search, and not evidence which has an independent source, or which inevitably would have been discovered without the inventory search. *See accord, State v. Aguilar*, 98 N.M. 510, 650 P.2d 32 (1982); *State v. O'Bremski*, 70 Wash.2d 425, 423 P.2d 530 (1967).

The butt of the marijuana cigarette was discovered in the independent and prior plain view search conducted by Officer Jones. Thus it is not tainted by the inventory search and need not be suppressed.

██ The scales were discovered during the illegal inventory search. Suppression of this evidence is not required if it inevitably would have been discovered without police misconduct. *Nix v. Williams*, 467 U.S. 431, 104 S.Ct.2501, 81 L.Ed.2d 377 (1984). The *Nix* Court explained, "[e]xclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial". 467 U.S. at 446, 104 S.Ct. at 2510. The inevitable discovery exception is available to the State only if the warranted search of the car is legally founded.

██ Appellant challenged the warrant prior to trial by filing a Motion to Suppress the marijuana in the car citing *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (search warrant supported only by false statement made knowingly or with reckless disregard for the truth is void, and evidence obtained thereby must be suppressed). The motion was overruled.

Appellant argues on appeal this was error, for the affidavit submitted by Officer Kitten to support the search warrant for the car negligently or intentionally failed to mention the fact the car had already been subjected to an inventory search. The State counters this argument by asserting the probable cause for the warrant did not come from the illegal inventory search, but rather from the sniff by Scrapper while the car was impounded.

██ For reasons unknown to the appellant, the State, or this Court, Officer Kitten was less than candid with the magistrate in his affidavit seeking a search warrant for the car. This alone does not void the warrant, if probable cause for the warrant was otherwise provided by the affidavit. *See Franks v. Delaware*, 438 U.S. at 158, 98 S.Ct. at 2677.

The appellant's car was not seized lawfully, for the police did not follow the mandates of the city ordinance. Therefore, the sufficiency of the affidavit is immaterial since the prior unreasonable seizure of the car taints the probable cause for the warrant subsequently developed by the police. This result is consistent with *Place* where evidence discovered by dog-sniff which did not trigger the Fourth Amendment was nevertheless inadmissible due to illegal seizure. Thus, two items of evidence are the fruits of the tainted impoundment and should have been suppressed: (1) the scales, found pursuant to the invalid inventory search, and (2) the twenty (20) grams of viable marijuana seeds found pursuant to the void warrant in the coat pocket in the front seat of the car.

██ Appellant next challenges the warranted search of room "5" of the Uptown Motel, arguing the warrant was directed to any law enforcement officer of *Cleveland* County; but it was served by a City of Purcell Police Officer from McClain County. Examination of the context makes clear this is merely a scrivener's error which does not trigger the exclusionary rule.

The search warrant for room "5" was the third of three search warrants issued by the magistrate in this case. The first two, for the handbag and car, were typed on printed McClain County forms. For reasons unknown, the third warrant was typed on a printed Cleveland County form. The typist changed "Cleveland" to "McClain" in the style of the warrant and once in the body. "Cleveland" was overlooked once, and the magistrate issued the warrant directed to:

"Any Sheriff, Deputy,...Policeman...in the County of Cleveland."

To punish the police for this obvious scrivener's error in the search warrant which slipped by the magistrate would not serve the deterrent purpose of the exclusionary

rule. As the United States Supreme Court held in *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984):

> Suppressing evidence because the judge failed to make all the necessary clerical corrections despite his assurances that such changes would be made will not serve the deterrent function that the exclusionary rule was designed to achieve. Accordingly, federal law does not require the exclusion of the disputed evidence in this case.

468 U.S. at 990–91, 104 S.Ct. at 3429. We find no legal distinction in the fact the magistrate in this case did not promise to make clerical corrections. This scrivener's error does not require suppression of evidence.

■ Nevertheless the evidence, seven (7) grams of marijuana, found in room "5" should have been suppressed. At trial the only evidence connecting the appellant to room "5" of the Uptown Motel was the hearsay testimony of Officer Tompkins. Over defense objection he testified the motel manager showed him the motel registry which listed the appellant and her husband as the occupants of room "5". The trial court limited the use of this hearsay testimony to show why a warrant was obtained, and prohibited its use to prove the Skellys in fact occupied the room. The State offered no other evidence to prove who occupied room "5". Without any evidence as to who occupied room "5", the fact that (7) grams of marijuana was found in the room was not admissible against the appellant. 12 O.S.1981, § 2402.

■ Appellant next points to two instances of alleged prosecutorial misconduct. She first argues the Prosecutor violated her Fifth Amendment right to silence by stating she refused to let the police search her purse. This comment, which came in opening statement, passed without contemporaneous objection. Appellant cites no authority to support her position, and thus triggers only plain error review by the Court. *Brewer v. City of Tulsa*, 811 P.2d 604 (Okl.Cr.1991).

■ We are not persuaded by Appellant's bald allegation. The Fifth Amendment protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature. *Schmerber v. State of California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Appellant's refusal to let her purse be searched is not testimonial, and communicates nothing regarding her knowledge of any fact germane to the case. We find nothing here which implicates the appellant's privilege not to "be compelled in any criminal case to be a witness against himself". U.S. Const. amend.5. Any comment by the prosecutor regarding this refusal could not, therefore, implicate Appellant's Fifth Amendment privilege.

■ The next challenged statement came in closing argument. In his closing defense counsel mentioned the Uptown Motel was near the high school. The prosecutor then argued, without objection, the appellant was selling marijuana to high school students. This, he asserted, explained why she possessed small quantities and was unarmed. Appellant complains for the first time on appeal this is error warranting reversal. We agree the argument is highly improper.

Nowhere in the record is there any evidence direct, or circumstantial which provides a foundation for the prosecutor's rank and inflammatory speculation. The only possible purpose of this unsupported argument is to arouse societal alarm.

■ To summarize, we find the following evidence should have been suppressed: (1) the set of scales found pursuant to illegal impoundment, (2) the 20 grams of viable marijuana seed found in the coat pocket in the car pursuant to the void warrant, and (3) 7 grams of marijuana found in the motel room but never connected to the appellant at trial. We also find prosecutorial misconduct in the closing argument that the appellant sold marijuana to high school students. Error alone does not require reversal. In this case, where the crime charged is Possession With Intent to Distribute, quantity and motive are important factors in the finding of guilt and sentencing. Given the small amount of marijuana and seeds admissible in this case, and no evidence of distribution, we find these errors combine to require reversal and remand for new trial.

We conclude by examining for the first time the proper procedure for the trial court to follow when a party disobeys an *Allen* discovery order. *See Allen v. District Court of Washington County*, 803 P.2d 1164 (Okl.Cr.1990); *See also State v. Lefebvre*, 875 P.2d 431 (Okl.Cr.1994) (upholding trial court sanction of dismissal with prejudice). The State disregarded the *Allen* order directing discovery in this case and failed to disclose three items of evidence: a video tape of the warranted search of Room 5, a germination report on the marijuana seeds found in the coat pocket in the car, and the grams/ounce scale taken from Mr. Skelly when he was booked into jail. Having discovered the State's omissions, defense counsel asked for a continuance. In opposition to the motion for continuance the prosecutor argued he had a case to show *Allen* was not good law. This case was never produced; and the trial court overruled appellant's motion.

Appellant argues reversal for new trial is the appropriate remedy for the trial court's refusal to grant a continuance. While acknowledging the prosecutor's failure to comply with the *Allen* order, the State argues this error is harmless.

We take a very dim view of the State failing to comply with the discovery order entered by the trial court. *Allen* expressly mandates sanctions for violation of the discovery order. 803 P.2d at 1169. At the same time *Allen* recognizes the trial judge is in the best position to cure the violation and expressly gives the trial court wide discretion in fashioning relief to the aggrieved party.

If we accepted the State's argument that wholesale disregard of the trial court's discovery order may be found harmless during appellate review, we would eviscerate *Allen* of its value. We are unwilling to engage in hind sight review for the simple reason that once the discovery order is violated, and the trial court denies appropriate relief, the offended party has no choice but to deal with the newly revealed evidence the best it can. This Court explained in *Allen* "appropriate relief *shall be granted*" for violations of the discovery order. Relief is appropriate when it is imposed at the proper time. We therefore impose a duty on the trial court to enforce discovery orders entered pursuant to *Allen* by granting appropriate relief to the aggrieved party. This was not done and so we must also reverse on the ground the trial court did not enforce its discovery order.

LUMPKIN, P.J., JOHNSON, V.P.J., and CHAPEL and STRUBHAR, JJ., concur.