2002 OK CR 9

**Anthony Rozelle BANKS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. D–1999–1483.**

Court of Criminal Appeals of Oklahoma.

Feb. 21, 2002.

---

392

James C. Bowen, O.I.D.S, Sapulpa, OK, Mark D. Matheson, Tulsa, OK, Attorneys for Defendant at trial.

Chad A. Greer, Doug E. Drummond, Assistant District Attorneys, Office of District Attorney, Tulsa, OK, Attorneys for the State at trial.

Bill Zuhdi, Zuhdi Law Offices, Oklahoma City, OK, Attorney for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, David M. Brockman, Assistant Attorney General, Oklahoma City, OK, Attorneys for Appellee on appeal.

## OPINION

CHAPEL, Judge:

¶ 1 Anthony Rozelle Banks was tried by jury and convicted of First Degree Murder in violation of 21 O.S.Supp.1979, § 701.7, in the District Court of Tulsa County Case No. CF–97–3715. The jury found three aggravating circumstances: (1) that Banks was previously convicted of a felony involving the use or threat of violence to the person; (2) that the murder was committed to prevent lawful arrest or prosecution; and (3) that the murder was especially heinous, atrocious, or cruel.[1] In accordance with the jury's recommendation, the Honorable Thomas C. Gillert sentenced Banks to death.

## FACTS

¶ 2 At approximately 11:30 p.m. on June 6, 1979, Sun Travis was returning home from work. As she was driving into her apartment complex on South College Street, her husband (Steve Travis) heard their car muffler and peered out the apartment window. He saw Sun drive toward her designated parking spot, and also noticed a light blue or white hatchback automobile following her. A few minutes passed. Concerned, Steve walked outside to the lot, where he discovered the car parked in the wrong space with dome and headlights on. The pillow upon which Sun sat to drive was on the ground next to the car.

¶ 3 Steve returned to the apartment and called the police. The next morning, Sun's lifeless and partially clothed body was found in the grass next to a nearby road. Sun had several bruises on her face. She had been killed by a gunshot wound to the head.

¶ 4 In November 1979, Banks was in custody on unrelated charges when he asked to speak with the Tulsa County District Attorney about the Sun Travis murder. Banks's version of Sun Travis's death begins at approximately 11:00 p.m. on June 6, 1979: *I was at a convenience store in my light blue AMC Hornet hatchback when Allen Nelson asked me for a ride. I drove him to what turned out to be Travis's apartment complex; Sun Travis pulled up in her car. Nelson exited my car, began talking to Travis, reentered my car with Travis, and requested that I drive them to the Apache Manor Apartments. Once there, Nelson and Travis entered the apartments while I drank beer and waited. Nelson and Travis, now shirtless, returned. I drove them around for about ten minutes, when Nelson asked me to stop the car on 36th Street, about three hundred yards from the entrance of the Comanche Apartments.*

¶ 5 *Travis exited to the front of the car, Nelson to the rear, after which he circled around to the front and shot Travis in the head. Nelson returned to the car and asked me not to tell anyone. We drove away, until Nelson noticed a sewer drain and asked me to stop. He discarded Travis's blouse and purse in the drain, then returned to the car. I drove him home.*[2]

¶ 6 Despite Banks's statement, made in 1979, the Travis case remained open until 1997, when DNA analysis was performed on sperm samples obtained from the victim and her clothing. DNA analyst David Muniec testified that the sperm found on Travis's clothing was a mixture, matching both Banks's and Nelson's DNA. Muniec also

---

1. 21 O.S.1991, § 701.12. The Bill of Particulars also alleged that Banks would commit criminal acts of violence that would constitute a continuing threat to society. The jury did not find that this aggravator existed.

2. State's Exhibit 52 (paraphrased).

testified that the sperm found on a vaginal swab matched Banks and the sperm on an anal swab matched Nelson. Forensic Chemist Julie Kempton also testified that the DNA found on Travis's pants was a mixture of Banks's and Nelson's DNA.

## ISSUES RELATING TO PRETRIAL PROCEEDINGS

¶ 7 In Proposition VI, Banks argues that the trial court erred in allowing the State to prosecute him pursuant to the Second Amended Information, claiming prejudice in that he had no notice of the State's intent to prosecute him for first degree malice aforethought murder. This claim fails.

¶ 8 On August 6, 1997, Banks was charged by Information with malice aforethought murder. At preliminary hearing on June 5, 1998, the State asked for, and without objection was granted, authority to amend the Information to charge Banks alternatively with malice aforethought murder and felony murder in the commission of the felonies of kidnapping and rape by force or fear. On June 25, 1998, the State mistakenly filed an Amended Information only charging Banks with felony murder, but corrected the error on August 27, 1999, by filing the Second Amended Information alleging malice aforethought murder and felony murder in the commission of kidnapping or rape by force or fear. Banks was not prejudiced as he was tried and convicted based upon the same evidence and charges that he was given notice of at preliminary hearing.[3] This Proposition is denied.

¶ 9 In Proposition II, Banks claims the trial court erred in overruling his motion to quash the search warrant issued to obtain his blood sample and suppress the DNA evidence it revealed. Banks contended that

---

3. 22 O.S.1991, § 304 (information may be amended at any time as long as defendant's rights not materially prejudiced).

4. *Skelly v. State,* 1994 OK CR 55, 880 P.2d 401, 406 (warrant containing misrepresentations not voided where otherwise supported by probable cause).

5. *Spuehler v. State,* 1985 OK CR 132, 709 P.2d 202, 204–05 quoting *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

material misstatements existed in the affidavit for the search warrant. The trial court denied the motion, finding first that the misrepresentations were not material and second, that even without the offending language, other sufficient allegations supported a finding of probable cause. We agree.

¶ 10 The affidavit correctly stated that semen had been obtained from a victim of sexual assault and murder. Probable cause to obtain Banks's blood was then established by his own admissions as outlined in the affidavit. Banks admitted accompanying Nelson "when Nelson committed the crimes." Thus, we find that assuming *arguendo* misrepresentation, the search warrant was supported by probable cause.[4]

## ISSUES RELATING TO FIRST STAGE PROCEEDINGS

¶ 11 In Proposition I, Banks asserts that the evidence was insufficient to convict him of first degree murder. In evaluating evidence sufficiency, this Court considers it in a light most favorable to the State to determine whether "any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt."[5] Banks was alternatively charged with malice aforethought and felony murder in the commission of a kidnapping or forcible rape. The jury verdict form indicates Banks was found guilty of both and the evidence was sufficient to convict him of both [6].

¶ 12 In a light most favorable to the State, the evidence established that Banks and Nelson drove in Banks's car to Travis's apartment complex. Upon Travis's arrival, they forced her into their car, drove to the Apache Manor Apartments, forced her into an apartment, vaginally and anally raped her, re-

---

6. *Lambert v. State,* 1999 OK CR 17, 984 P.2d 221, 229 (When a general verdict of first degree murder is returned, we consider the conviction to be a felony murder conviction. However, we will also address Banks's arguments regarding the sufficiency of the evidence for malice aforethought murder.)

turned to the car, and drove to 36th street where one or the other shot Travis in the head.

¶ 13 To convict Banks of malice aforethought murder, the jury had to find that he caused the unlawful death of a human with malice aforethought,[7] or aided and abetted another in the commission of the murder with the personal intent to kill, and with knowledge of the perpetrator's intent to kill.[8] "Aiding and abetting in a crime requires the State to show that the accused procured the crime to be done, or aided, assisted, abetted, advised or encouraged the commission of the crime." [9]

¶ 14 Banks argues that the evidence was insufficient because the State did not prove that he either shot Travis or aided and abetted Nelson when he shot her. In his police statement, Banks admitted his presence at all crime scenes, but claimed that Nelson acted unilaterally when he killed Travis.

¶ 15 Banks's admitted presence at the crime scenes is consistent with the evidence. His denials of participation and/or culpability are not. Banks's DNA was found on evidence gathered from the victim's corpse and clothing, establishing his participation in forcible rape. Although the State admits uncertainty over whether Banks or Nelson actually shot Travis, a jury could have believed that Banks had done so—or that he, at a minimum, aided and abetted in the murder—especially given that Banks fingered Nelson as the sole sexual partner. What seems obvious is that Travis was killed to conceal her rapists' identities. Banks was one of the rapists. He may or may not have actually pulled the trigger; if he did not, he may nevertheless have encouraged Nelson to do so. As such, a rational jury could have convicted Banks of malice aforethought murder.

¶ 16 To convict Banks of felony murder, the jury had to find that the victim was killed in the commission of a kidnapping or forcible rape, either of which it could have easily done. To establish kidnapping, the State had to prove that the victim was unlawfully seized and secretly confined against her will.[10] To establish forcible rape, the State had to prove that the victim was forced to have intercourse by someone other than her spouse.[11]

¶ 17 The evidence established that Travis was murdered in the commission of both felonies. Viewing the evidence in a light most favorable to the State, the victim was taken forcibly from her parking lot, as indicated by the car lights and misplaced driving pillow. She was then transported to an apartment, where she was forced to have intercourse, as established by the bruises and semen on her body and the semen found on her clothes. Upon completion of these crimes, the victim was executed on the roadside. All elements of felony murder in the commission of rape or kidnapping were met. The only question for the jury was who committed the crimes.

¶ 18 Banks was one of two perpetrators. He admitted his presence at all relevant locations; it was his car that was used to abduct the victim; it was partly his semen found on the victim's clothing and his semen alone on the vaginal swab.

¶ 19 Banks argues that the DNA evidence was inaccurate because his brother's DNA was not compared to that obtained from Travis. Although the DNA experts agreed that a sibling's DNA could skew statistical results, that observation did not change their opinion that Banks's DNA matched that obtained from the victim. Banks also claims that his brother's refusal to testify based upon the Fifth Amendment supports his brother's possible guilt for these crimes. The record indicates instead that Walter Banks (1) did not want to incriminate his brother and (2) did not want to return to his own prison term labeled a "snitch." Banks

7.  21 O.S.Supp.1976, § 701.7.

8.  *Torres v. State*, 1998 OK CR 40, 962 P.2d 3, 15, cert. denied, 525 U.S. 1082, 119 S.Ct. 826, 142 L.Ed.2d 683 (1999).

9.  *Id.*, quoting *Spears v. State*, 900 P.2d 431, 438 (Okl.Cr.1995), *cert. denied*, 516 U.S. 1031, 116 S.Ct. 678, 133 L.Ed.2d 527 (1995).

10.  21 O.S.1971, § 741.

11.  21 O.S.1971, § 1111.

benefited from both arguments by allowing the jury to infer that his brother, Walter, could have committed the crimes. However, neither argument affected the sufficiency of the evidence to convict Banks of malice aforethought or felony murder in the commission of a kidnapping or forcible rape. This Proposition is denied.

¶ 20 In Proposition VIII, Banks argues that error occurred when the State was allowed to call Walter Banks to testify, *knowing* he would invoke a Fifth Amendment privilege against self incrimination. The State called Walter Banks to testify. He refused, claiming the Fifth Amendment. During an *in camera* hearing, Walter Banks reiterated his stance. The trial court informed him that he had no valid Fifth Amendment privilege, and could not refuse to testify. The State then requested that it be allowed to call him to "refresh his recollection" with his prior statement. Banks objected. After hearing argument, the trial court overruled the objection and allowed the State to do so. On direct examination, the State asked Walter Banks ten (10) questions. In response to each one, Walter Banks invoked the Fifth Amendment.

¶ 21 The trial court was correct. Walter Banks had no valid Fifth Amendment privilege to invoke, as it only protects individuals from *self*-incrimination.[12] Here, Walter Banks instead was being called to incriminate his brother. "Regardless of the validity of the claim of privilege, the law requires that the claim [of privilege] be asserted outside the jury's presence, 'to the extent practicable.'"[13] The trial court knew that Walter Banks would refuse to testify, and would invoke a privilege, but still allowed the State to call Walter Banks before the jury. The State then asked Walter if he knew who killed Sun Travis, and if his brother had told him that he killed Sun Travis. This should not have occurred.

¶ 22 However, allowing Walter Banks to be questioned before the jury is only reversible error if (1) the State crafted its case around inferences arising from privilege invocation or (2) "the witness's refusal to answer questions added critical weight to the State's case in a form not subject to cross-examination."[14] The only logical inference from the State/Walter Banks exchange is that Walter knew the answer to both questions and that it was his brother, defendant Anthony Banks, who killed Sun Travis. However, the State did not build its case on this inference nor did it add critical weight thereto.

¶ 23 The State's case was built on DNA evidence and the defendant's own statement. The State never mentioned Walter's refusal to testify again—not even in closing.[15] Banks admitted his presence at the victim's abduction, rape, and murder. His statements were corroborated and his participation established by DNA found in and on the victim. We conclude that any error in allowing Walter Banks to be questioned after he attempted to invoke the Fifth Amendment privilege was harmless beyond a reasonable doubt because it did not contribute to the jury's verdict.

¶ 24 In Proposition IV, Banks complains that his trial was rendered fundamentally unfair by the State's introduction of other crimes evidence—specifically, three references during opening and closing arguments to Banks's reason for talking to police about the Travis murder. The prosecutor told the jury that Banks had given his statement to get "out of trouble," to get "a break," and to get "some help from the police."[16] None of these comments informed the jury that Banks had committed any other crimes, and the mere suggestion that he may

---

12. *Jackson v. State*, 1998 OK CR 39, 964 P.2d 875, 886, *cert. denied*, 526 U.S. 1008, 119 S.Ct. 1150, 143 L.Ed.2d 217 (1999).

13. *Id.*, quoting 12 O.S.1991, § 2513(B).

14. *Johnson v. State*, 1995 OK CR 43, 905 P.2d 818, 822.

15. In closing, the State did refer to the "Walter Banks theory" but this was not a comment on his failure to testify. Instead, it was a comment on Banks's assertion that his brother Walter could have been the perpetrator.

16. Banks did not object to any of the comments.

have is not improper.[17] The prosecutor's arguments were fair comments on Banks's motivation for giving his statement to the police. This proposition is denied.

¶ 25 In Proposition X, Banks argues that the trial court erred in failing to give separate verdict forms for felony murder and malice aforethought murder. Although this is the better practice, it is not constitutionally required.[18] Since the evidence supported Banks's conviction for both felony and malice aforethought murder, the verdict was proper.[19] This proposition is denied.

### ISSUES RELATING TO SECOND STAGE PROCEEDINGS

¶ 26 In Proposition IV, Banks argues that the trial court erred in overruling his objection to the title, but not contents, of one of the prosecutor's illustrations entitled "Trail of Terror" which detailed Banks's criminal history. The trial court overruled the objection by finding that the title reasonably commented on the evidence and was not unduly prejudicial. Although the illustration was neither admitted into evidence nor included in the record, we review Banks's argument based upon the existing record.

¶ 27 Banks claims that the "Trail of Terror" title was prejudicial and inflammatory. He nevertheless concedes that had the illustration merely included the summary of Banks's past convictions, without the title, it would have been an admissible statement for sentencing purposes. We fail to see how this three-word title was unduly prejudicial, as it

fairly commented on Banks's lengthy criminal history.[20] This Proposition is denied.

¶ 28 In Proposition IX, Banks claims that his death sentence must be overturned because the jury was allowed to sentence him to death without determining his culpability for felony murder. To be so sentenced, at minimum Banks had to have participated in the underlying felonies and displayed reckless indifference to human life.[21] Banks's jury made this finding because it was instructed that it could not impose the death penalty without finding beyond a reasonable doubt that Banks either: "1) killed a person, 2) attempted to kill a person, 3) intended a killing take place, 4) intended the use of deadly force, or 5) was a major participant in the felony committed and was recklessly indifferent to human life." [22] Moreover, an appellate court may also make this finding.[23]

¶ 29 The evidence established that the State met the minimum two-part test. Banks participated in Sun Travis's abduction and rape, and transported her to the murder scene. While it remains unclear who actually shot Travis, it is very clear that either Nelson or Banks did, and just as likely to have been Banks as the person he self-servingly named as the perpetrator. Moreover, even if it was not Banks, he intended Travis's death to conceal his participation in her rape. We find that Banks was a major participant in Travis's kidnapping and rape and at a minimum intended her death. Accordingly we find no error.[24] This Proposition is denied.

17. *Bernay v. State*, 1999 OK CR 46, 989 P.2d 998, 1008, *cert denied*, 531 U.S. 834, 121 S.Ct. 92, 148 L.Ed.2d 52 (2000). (mere suggestion of other crimes does not trigger rules regarding their admissibility).

18. *Schad v. Arizona*, 501 U.S. 624, 645, 111 S.Ct. 2491, 2504, 115 L.Ed.2d 555 (1991)(U.S. Constitution does not command use of separate verdict forms on alternative theories of first degree murder).

19. *Hain v. State*, 1993 OK CR 22, 852 P.2d 744, 752, *cert. denied*, 511 U.S. 1020, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994). (single verdict form proper where evidence supports malice aforethought or felony murder).

20. *Le v. State*, 1997 OK CR 55, 947 P.2d 535, 554, *cert. denied*, 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998).

21. *Tison v. Arizona*, 481 U.S. 137, 158, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987).

22. O.R. 472.

23. *Cabana v. Bullock*, 474 U.S. 376, 392, 106 S.Ct. 689, 700, 88 L.Ed.2d 704 (1986), *overruled in part on other grounds by Pope v. Illinois*, 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987).

24. Banks also argue in Propositions X and XI that since the jury did not and could not have made an individualized culpability finding, his death sentence was unconstitutional. We dis-

¶ 30 In Proposition XIII, Banks claims that the trial court erred in overruling his Motion to Strike the Previous Felony Aggravating Circumstance as Void or alternatively, grant him a *Brewer* hearing.[25] Banks specifically argues that error occurred when the State presented the facts of Banks's prior conviction for an unrelated first degree murder charge without a *Brewer* hearing. These arguments fail.

¶ 31 First, we see no reason to change our prior ruling finding the previous violent felony aggravating circumstance constitutional.[26] In any event, Banks was not entitled to a *Brewer* hearing regarding his previous first degree murder conviction; its underlying facts were properly introduced to support the continuing threat aggravating circumstance.

¶ 32 In its Amended Bill of Particulars, the State asserted four aggravating circumstances including the continuing threat and previous violent felony aggravating circumstances. The State also notified Banks that his convictions for two counts of Robbery with a Dangerous Weapon would be used to support the previous violent felony aggravating circumstance. Pursuant to *Brewer*, Banks stipulated that these convictions were for violent felonies. Banks's other felony convictions, including his first degree murder conviction, were used to support the continuing threat aggravating circumstance.

¶ 33 Banks asserts that he should also have been allowed to stipulate to his first degree murder conviction to prohibit the State from introducing its underlying facts into evidence. This claim lacks merit as Banks's prior first degree murder conviction was not used to support the previous violent

felony aggravating circumstance. Even had it been, the State could have presented its underlying facts to support the continuing threat aggravator.[27] This Proposition is denied.

¶ 34 In Proposition XIV, Banks argues that the evidence was insufficient to support the aggravating circumstance that the Travis murder was committed to avoid or prevent lawful arrest or prosecution. We review the evidence of this aggravator for proof of a predicate crime, separate from the murder, for which the defendant is attempting to avoid prosecution.[28] Consideration is given to the circumstantial evidence to determine if "any reasonable hypothesis exists other than the defendant's intent to commit the predicate crime." [29]

¶ 35 Here, the evidence indicated that Travis was raped and kidnapped, that both Banks and Nelson committed these crimes, and at least intended her death.[30] Further, the only reasonable hypothesis for Travis's murder was that it was done to prevent her from identifying her assailants and instigating their arrest or prosecution for kidnapping and rape. The evidence was sufficient, and this Proposition is denied.

¶ 36 In Proposition XV, Banks alleges that the trial court erred in overruling his Motion to Strike the "heinous, atrocious and cruel" aggravating circumstance for insufficient evidence, and that the trial evidence failed to support the jury's finding that it existed. We review the evidence presented at trial in a light most favorable to the State to determine if the victim's death was

---

agree and deny those arguments for the reasons stated in this Proposition.

**25.** *Brewer v. State*, 1982 OK CR 128, 650 P.2d 54, 63, *cert. denied*, 459 U.S. 1150, 103 S.Ct. 794, 74 L.Ed.2d 999 (1983). (defendant allowed to stipulate to prior violent felonies).

**26.** *Cleary v. State*, 1997 OK CR 35, 942 P.2d 736, 746–47, *cert. denied*, 523 U.S. 1079, 118 S.Ct. 1528, 140 L.Ed.2d 679 (1998).

**27.** *Smith v. State*, 1991 OK CR 100, 819 P.2d 270, 277–78, *cert. denied*, 504 U.S. 959, 112

S.Ct. 2312, 119 L.Ed.2d 232 (1992). (when state alleges prior violent felony and continuing threat aggravating circumstances, it may introduce evidence of factual basis for stipulated felony convictions to support continuing threat aggravating circumstance).

**28.** *Romano v. State*, 1995 OK CR 74, 909 P.2d 92, 119, *cert. denied*, 519 U.S. 855, 117 S.Ct. 151, 136 L.Ed.2d 96 (1996).

**29.** *Id.*

**30.** See Propositions I and IX.

preceded by conscious serious physical abuse or torture.[31]

¶ 37 The trial judge correctly overruled the motion and determined that the evidence was sufficient. While conscious, and before her execution, Sun Travis was kidnapped, physically assaulted, and raped and sodomized by Banks and Nelson.[32] Her ordeal lasted over two hours. Such evidence was sufficient to prove extreme mental and physical suffering and constituted serious physical abuse and torture. Thus, we find that the evidence supported the jury's finding of the "heinous, atrocious and cruel" aggravating circumstance. This Proposition is denied.

¶ 38 In Proposition XI, Banks claims that the trial court erred in denying his Motion to Quash Bill of Particulars and Declare the Death Penalty Unconstitutional. Banks specifically asserts that the death penalty is unconstitutional because a bill of particulars is filed solely at the prosecutor's discretion without a finding of probable cause. In previously rejecting this argument, this Court found that the combination of the Oklahoma statutes and case law provide adequate guidelines to direct the prosecutor in deciding whether to pursue the death penalty.[33] This Proposition is denied.

¶ 39 In Proposition XII, Banks ask this Court to reconsider its previous ruling upholding the constitutionality of Oklahoma's death penalty scheme and its previous decision finding that the sentencing procedure does not offend the Oklahoma Constitution because it requires a jury to make special findings of fact. Banks offers no compelling justification for our doing so, either in his

brief or in his motions filed in the trial court. Thus, we find no reason to overrule our previous decisions.[34]

¶ 40 In Proposition XVIII, Banks claims that given his minority and indigent status, his execution would violate the Constitution. Banks's argument fails. Nothing in the record suggests that his race or poverty contributed to the jury's conviction. The trial and sentencing were conducted in accordance with Oklahoma law. Oklahoma's capital punishment system is constitutional and to the extent possible, assures that the death penalty will only be assessed against "criminals whose crimes set them apart from 'any other murder.' " [35]

## ISSUES RELATING TO FIRST AND SECOND STAGE PROCEEDINGS

¶ 41 In Proposition VII, Banks alleges eight separate instances where he was denied a fair trial due to prosecutorial misconduct. Most of the alleged misconduct was not objected to, waiving all but plain error.[36] We note that both parties may freely discuss, during argument, reasonable inferences from the evidence; error only occurs if a grossly unwarranted argument affects the defendant's rights.[37]

¶ 42 Banks first claims that the prosecutor improperly evoked sympathy for the victim. The argument, not objected to, accurately described the victim's rape and brutal death. This fairly characterized the evidence. There was no error.

---

**31.** *Romano,* 909 P.2d at 118.

**32.** Banks continues to assert, as he did in the preceding Propositions, that the evidence did not show that he participated in the acts preceding Travis's death or her death. However, as we have stated, the evidence established that Banks and Nelson committed Travis's kidnapping, rape and murder.

**33.** *Romano v. State,* 1993 OK CR 8, 847 P.2d 368, 393, *cert. granted in part* by *Romano v. Oklahoma,* 510 U.S. 943, 114 S.Ct. 380, 126 L.Ed.2d 330 (1993).

**34.** *Id.* at 384–85 (verdicts rendered in capital sentencing procedure are general verdicts complying with Art. 7, § 15 of the Oklahoma Consti-

tution); and *Hain v. State,* 852 P.2d 744, 747–48 (Okl.Cr.1993), *cert. denied,* 511 U.S. 1020, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994). (Oklahoma capital punishment system constitutional and meets established Supreme Court requirements).

**35.** *Hain,* 852 P.2d at 747–48 (upholding Oklahoma's procedure for death qualifying a juvenile).

**36.** *Selsor v. State,* 2000 OK CR 9, 2 P.3d 344, 354, *cert. denied,* 532 U.S. 1039, 121 S.Ct. 2002, 149 L.Ed.2d 1004 (2001).

**37.** *Id.*

¶ 43 Banks next asserts that the prosecutor made improper arguments not based on the evidence. The prosecutor informed the jury that from the State's perspective, he stood proudly with his case and for justice, and that the "people of the State of Oklahoma are entitled to a guilty verdict." Although these arguments suggest that the prosecutor was impermissibly expressing personal opinion, in context, they were simply an assertion to the jury that the evidence supported a verdict of guilt. The comments were not improper.

¶ 44 Banks finds particular grievance in what he terms the prosecutor's "improper disparagement" of defense counsel. The prosecutor argued that one of Banks's defense theories was "likely born in these lawyers's offices last night," that focusing the jury's attention away from the circumstantial evidence of Banks's guilt was "one of the oldest tricks in the book for defense counsel," and that the "game here is to say we [the state] haven't done anything . . . haven't presented any evidence, haven't done this, haven't done that . . . to somehow divert your attention from the focus of this case." These comments were not particularly egregious and may be viewed as challenging Banks's defense in light of the evidence.[38]

¶ 45 Banks's most meritorious claim is that the prosecutor improperly commented on his invocation of the right to silence. The prosecutor stated that Banks had not "come forward to be accountable for what has taken place." Immediately after an objection was overruled, the prosecutor stated "[y]ou judge that, on the conversion and what that means, and the fact that he has not been held accountable or has said anything, even remotely—willing to come forward and say what happened." Banks again objected, and the court admonished the jury to disregard the prosecutor's statement.

¶ 46 The comments were improper. However, given their quick succession, we find that the trial court's admonishment cured any error from either comment.[39] Additionally, we find that these comments in second stage argument did not contribute to the jury's sentencing decision as the aggravating circumstances outweighed mitigating circumstances.

¶ 47 Along this vein, Banks charges that the prosecutor improperly built its case around inferences arising from Walter Banks's testimony. We resolved this argument in Proposition VIII and see no reason to revisit it here.

¶ 48 Finally, with respect to this proposition, Banks asserts that all unobjected-to comments were plain error, which when taken cumulatively mandate relief. We find that whether proper or improper, standing alone or together, objected-to or not, no prosecutorial comment prejudiced Banks or affected his substantial rights. This Proposition is denied.

¶ 49 In Proposition V, Banks claims that his trial counsel was ineffective. To prevail on this claim, Banks must counteract our presumption that trial counsel's representation was reasonable and based upon sound trial strategy[40] with proof that "counsel's performance was deficient and that he was prejudiced as a result."[41] To show prejudice, Banks must establish that absent the alleged errors, the outcome of his case would have been different.[42]

¶ 50 First, Banks alleges ineffective assistance in trial counsel's failure to object to alleged prosecutorial misconduct. Under Proposition VII, the asserted misconduct was either not error or was cured by admonishment, and was not prejudicial. Banks cannot establish deficient performance or prejudice.

¶ 51 Second, Banks alleges ineffective assistance in trial counsel's failure to object to inadmissible other crimes evidence. Proposi-

**38.** *Gilbert v. State*, 1997 OK CR 71, 951 P.2d 98, 121, *cert. denied*, 525 U.S. 890, 119 S.Ct. 207, 142 L.Ed.2d 170 (1998). (prosecutor's comments referring to contrived defense not error).

**39.** *Hammon v. State*, 1995 OK CR 33, 898 P.2d 1287, 1305 (trial court's admonishment cures any potential error).

**40.** *Selsor*, 2 P.3d at 354.

**41.** *Id.*

**42.** *Hooks v. State*, 2001 OK CR 1, 19 P.3d 294, 317.

tion IV found that the prosecutor's comments were not improper "other crimes" references and fairly commented on the evidence. Accordingly, trial counsel was not ineffective.

¶ 52 Third, Banks claims ineffective assistance in trial counsel's failure to compare brother Walter Banks's DNA to that found in and on Travis. Banks relies on the two DNA experts' testimony that sibling DNA results could skew overall statistics, and claims that the comparison could indicate his brother's guilt and his own innocence. This seems unlikely given Banks's admitted presence at the crime scenes.

¶ 53 Moreover, such comparison would have hindered counsel's cross-examination of the DNA experts and further incriminated Banks by removing counsel's ability to question the reliability of the DNA results and create reasonable doubt over Banks's guilt. As this was reasonable trial strategy, we find that trial counsel did not provide ineffective assistance at trial.[43]

¶ 54 In Proposition XIX, Banks claims that accumulation of error requires relief. We have determined that the individual errors in Propositions VII and VIII do not require relief, either individually or in the aggregate.[44]

## MANDATORY SENTENCE REVIEW

¶ 55 In Proposition XVI, Banks argues that his death sentence must be vacated because at trial the mitigating evidence outweighed the aggravating evidence. Additionally, in Proposition XVII, he argues that his death sentence was imposed as a result of passion, prejudice and arbitrary factors. We consider these arguments together. In so doing, we determine whether a rational trier of fact could find sufficient evidence that the aggravating circumstances outweighed mitigating circumstances.[45] Additionally, as part of the mandatory sentence review, we consider (1) whether the death sentence was imposed under the influence of passion, prejudice or other arbitrary factor, and (2) whether the aggravating circumstances were supported by sufficient evidence.[46]

¶ 56 The jury was instructed on eleven specific mitigating circumstances that were supported by the evidence,[47] and also instructed to consider "any other" mitigating circumstances that were present. By contrast, the jury found three of the four alleged aggravating circumstances,[48] all supported by the evidence as explained above.[49] After reviewing the record, the evidence establishes that the aggravating circumstances outweighed the mitigating circumstances and that the jury was not influenced by passion, prejudice or any arbitrary factors.

### Decision

¶ 57 The Judgment and Sentence is **AFFIRMED.**

---

43. For the reasons asserted in this proposition, we also deny Banks 3.11 Motion to Supplement and Application for Evidentiary Hearing filed on April 9, 2001.

44. *Selsor*, 2 P.3d at 355.

45. *Bernay v. State*, 989 P.2d 998, 1015 (Okl.Cr. 1999), *cert. denied*, 531 U.S. 834, 121 S.Ct. 92, 148 L.Ed.2d 52 (2000).

46. *Hooks*, 19 P.3d at 318.

47. They were as follows: (1) the defendant has been incarcerated since 1979; (2) the defendant has not committed any crimes since 1980; (3) the defendant has changed his personality over the last twenty (20) years; (4) the defendant can be rehabilitated and has shown evidence of that rehabilitation during the period of his incarceration; (5) the defendant had a religious conversion which has changed the way he conducts his life; (6) the defendant is a stabilizing presence in prison society; (7) the defendant conducts himself well in the structured environment of prison; (8) the defendant was under the influence of mental/emotional disturbance; (9) the defendant's emotional/family history; (10) the defendant was turned out of his home when he was fifteen (15) years old; (11) the defendant had no strong father figure to guide his emotional growth until he was incarcerated in prison.

48. The jury found (1) that Banks had previously been convicted of a felony involving the threat or use of violence to a person; (2) that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; (3) that the murder was heinous, atrocious and cruel. The jury did not find that Banks would pose a continuing threat to society.

49. We found in Propositions XIV and XV that the evidence was sufficient to support two of the aggravating circumstances. At trial, Banks stipulated to the previous violent felony aggravating circumstance.

JOHNSON, V.P.J., and STRUBHAR, J., concur.

LUMPKIN, P.J., and LILE, J., concur in results.

LUMPKIN, J.: Concurring in Result.

¶ 1 I concur in the result reached in this opinion, but disagree with some of the analysis used.

¶ 2 First, the Court, in its discussion of Proposition I, uses aider and abettor language from *Torres v. State*, 962 P.2d 3, 15 (Okl.Cr.1998). That language from *Torres* is inconsistent with Oklahoma's law regarding principals and is in conflict with this Court's unanimous analysis of the same issue in *Conover v. State*, 933 P.2d 904, 914–16 (Okl.Cr. 1997). I therefore restate my disagreement with this language, as I did in my concurring in results opinion in *Torres*.

¶ 3 Second, with respect to Proposition VIII, I find the present situation distinguishable from those presented in *Jackson v. State*, 964 P.2d 875, 886 (Okl.Cr.1998) and *Johnson v. State*, 905 P.2d 818, 822 (Okl.Cr. 1995). Here, the trial judge ruled, in camera, the witness had no valid privilege to invoke. Thus the trial court did not abuse its discretion by allowing the witness to be called to the stand to testify regarding matters to which he had been informed he had no valid privilege. Moreover, the failure to testify at least implied that Walter Banks was personally involved in the crime, as acknowledged in Appellant's brief, and Appellant seeks to use that fact to support his ineffectiveness of counsel claim.

¶ 4 Third, I disagree with the Court's use of a "reasonable hypothesis" analysis in its review of the sufficiency of the evidence supporting the aggravating circumstance of a murder committed to avoid or prevent lawful arrest or prosecution. The Court continues to use this analysis in its review of evidence introduced in both the guilt stage and in second stage proceedings, and I continue to object to it, as I did in *Wackerly v. State*, 12 P.3d 1, 20 (Okl.Cr.2000)(Lumpkin, J., Concur in results).

¶ 5 Finally, upon review of "Appellant's 3.11 Motion to Supplement and Application for Evidentiary Hearing", I agree with the Court's decision to deny the application. The motion does not comply with Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2000) in that it sets out what is hoped to be discovered at an evidentiary hearing rather than evidence which has already been discovered and Appellant desires to submit for inclusion in the record. Speculation is not "sufficient information to show this. Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained of evidence". *See*, Rule 3.11(B)(3)(6)(i).